UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

| | |
|---|---|
| **Cheryl Mueller**,<br><br>        Plaintiff,<br><br>v.<br><br>**Yassmin Gramian**, in his official capacity as Pennsylvania Secretary of Transportation; **Pete Buttigieg**, in his official capacity as U.S. Secretary of Transportation,<br><br>        Defendants. | Case No. _____ |

## COMPLAINT

On June 30, 2022, the Pennsylvania Department of Transportation (PennDOT) denied New Concept Staining's request to be certified as a "disadvantaged business enterprise" (DBE) under 49 C.F.R. part 26, even though 51% of New Concept Staining is owned by Cheryl Mueller, who qualifies as a "socially and economically disadvantaged individual" under federal law. PennDOT refused to certify New Concept Staining as a DBE because it determined that New Concept Staining was in fact controlled by Marshall Walters, a white male. If Mr. Walters had instead been a member of a racial minority group, then PennDOT would have approved New Concept Staining's application for DBE certification. Ms. Mueller brings suit to enjoin the defendants' racially discriminatory actions.

### JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Cheryl Mueller is a resident of Northampton County, Pennsylvania. Ms. Mueller is the majority owner of New Concept Standing LLC.

4. Defendant Yassmin Gramian is the Pennsylvania Secretary of Transportation and administrator of the Pennsylvania Department of Transportation (PennDOT). Secretary Gramian is sued in her official capacity.

5. Defendant Pete Buttigieg is Secretary of the United States Department of Transportation. He may be served at 1200 New Jersey Avenue SE, Washington, DC 20590. Secretary Buttigieg is sued in his official capacity.

## STATEMENT OF FACTS

### A. The "Disadvantaged Business Enterprise" Program

6. This case involves the U.S. Department of Transportation's "disadvantaged business enterprise" program (DBE).

7. The DBE program started in 1980 through a regulatory scheme issued under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et. seq. *See* https://www.transportation.gov/civil-rights/disadvantaged-business-enterprise (last visited on October 7, 2022).

8. Congress has reauthorized the program several times in various omnibus transportation bills. The most recent of these bills is the "Fixing America's Surface Transportation Act," also known as the "FAST-ACT," Pub. L. 114-94 (Dec. 4, 2015).

9. The federal statutes governing the "disadvantaged business enterprise" program require that "not less than 10 percent" of the funds made available to the DOT "shall be expended through small business concerns owned and controlled by socially

and economically disadvantaged individuals," "[e]xcept to the extent that the Secretary determines otherwise." Pub. L. 114-94 § 1101(b)(3).

10. The phrase "small business concern" refers to a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. § 632). *See* Pub. L. 114-94 § 1101(b)(2)(A).

11. The phrase "owned and controlled by socially and economically disadvantaged individuals" is defined in 15 U.S.C. § 637(d)(3), and it refers to a business:

> (i) which is at least 51 per centum owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 per centum of the stock of which is owned by one or more socially and economically disadvantaged individuals; and
>
> (ii) whose management and daily business operations are controlled by one or more of such individuals.

15 U.S.C. § 637(d)(3); *see also* Pub. L. 114-94 § 1101(b)(2)(B).

12. Finally, the phrase "socially and economically disadvantaged individual" is defined by statute to include "women" as well as "Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to section 8(a) of the Small Business Act." *See* Pub. L. 114-94 § 1101(b)(2)(B); 15 U.S.C. § 637(d)(3).

13. The Department of Transportation (DOT) has issued regulations for implementing the "disadvantaged business enterprise" program. Those rules can be found at 49 C.F.R. part 26.

14. These DBE regulations apply to every recipient of federal highway or transportation funds. *See* 49 C.F.R. § 26.3.

15. The DBE regulations require every recipient of DOT funding for transportation or highway projects to have a "disadvantaged business enterprise" program. *See* 49 C.F.R. § 26.21.

16. The Department's regulations describe the 10% statutory set-aside as an "aspirational goal at the national level, which the Department uses as a tool in evaluating and monitoring DBEs' opportunities to participate in DOT-assisted contracts." 49 C.F.R. § 26.41(b).

17. The Department's regulations define "socially and economically disadvantaged individual" as follows:

> *Socially and economically disadvantaged individual* means any individual who is a citizen (or lawfully admitted permanent resident) of the United States and who has been subjected to racial or ethnic prejudice or cultural bias within American society because of his or her identity as a members of groups and without regard to his or her individual qualities. The social disadvantage must stem from circumstances beyond the individual's control.
>
> (1) Any individual who a recipient finds to be a socially and economically disadvantaged individual on a case-by-case basis. An individual must demonstrate that he or she has held himself or herself out, as a member of a designated group if you require it.
>
> (2) Any individual in the following groups, members of which are rebuttably presumed to be socially and economically disadvantaged:
>
>> (i) "Black Americans," which includes persons having origins in any of the Black racial groups of Africa;[1]
>>
>> (ii) "Hispanic Americans," which includes persons of Mexican, Puerto Rican, Cuban, Dominican, Central or South American, or other Spanish or Portuguese culture or origin, regardless of race;

---

1. This presumably refers to those tracing ancestry to sub-Saharan Africa. The regulations to not presume individuals from North Africa to be socially or economically disadvantaged.

    (iii) "Native Americans," which includes persons who are enrolled members of a federally or State recognized Indian tribe, Alaska Natives, or Native Hawaiians;

    (iv) "Asian-Pacific Americans," which includes persons whose origins are from Japan, China, Taiwan, Korea, Burma (Myanmar), Vietnam, Laos, Cambodia (Kampuchea), Thailand, Malaysia, Indonesia, the Philippines, Brunei, Samoa, Guam, the U.S. Trust Territories of the Pacific Islands (Republic of Palau), Republic of the Northern Marianas Islands, Samoa, Macao, Fiji, Tonga, Kirbati, Tuvalu, Nauru, Federated States of Micronesia, or Hong Kong;

    (v) "Subcontinent Asian Americans," which includes persons whose origins are from India, Pakistan, Bangladesh, Bhutan, the Maldives Islands, Nepal or Sri Lanka;

    (vi) Women;

    (vii) Any additional groups whose members are designated as socially and economically disadvantaged by the SBA, at such time as the SBA designation becomes effective.

(3) Being born in a particular country does not, standing alone, mean that a person is necessarily a member of one of the groups listed in this definition.

49 C.F.R. § 26.5.

18. Every recipient of DOT funding from the Department must participate in a Unified Certification Program (UCP). *See* 49 C.F.R. § 26.81.

19. The purpose of the Unified Certification Program is to certify firms qualifying as "disadvantaged business enterprises" under federal regulations. *See* 49 C.F.R. § 26.81(b).

20. The Department's regulations require the Unified Certification Program to "make all certification decisions on behalf of the" recipient of DOT funding, and the certification decision made by the Unified Certification Program "shall be binding on all DOT recipients within the state." 49 C.F.R. § 26.81(b); 49 C.F.R. § 26.81(b)(1).

21. The Pennsylvania Department of Transportation (PennDOT) has been designated as a Unified Certification Program. *See* https://bit.ly/3RdEAy1 (last visited on October 7, 2022).

22. The Department's regulations prohibit funding recipients and Unified Certification Programs from discriminating "on the basis of race, color, sex, or national origin." 49 C.F.R. § 26.7 ("You must never exclude any person from participation in, deny any person the benefits of, or otherwise discriminate against anyone in connection with the award and performance of any contract covered by this part on the basis of race, color, sex, or national origin.").

### B.  New Concept Staining's Application For DBE Certification

23. New Concept Staining LLC is a woman-owned company that provides color concrete staining services to commercial and residential customers in the mid-Atlantic region and parts of New England.

24. New Concept Staining often bids for work on projects funded by the U.S. Department of Transportation.

25. New Concept Staining is owned and controlled by Cheryl Mueller.

26. Ms. Mueller is a woman, and is therefore presumed under federal law to qualify as "a socially and economically disadvantaged individual."

27. In December 2021, New Concept Staining applied for "disadvantaged business enterprise" (DBE) certification through the Pennsylvania Department of Transportation (PennDOT). It application number was 6029987.

28. On June 30, 2022, however, PennDOT rejected New Concept Staining's application for DBE certification. *See* Exhibit 1.

29. PennDOT's decision was based on the fact that Marshall Walters, a white male, owned 49% of New Concept Staining, as well as "concerns" surrounding New Concept Staining's "association with Marshall Walters and his [other] companies." *Id*.

PennDOT concluded that Marshall Walters and his businesses play an "indispensable role" in New Concept Staining. *Id.*

30. Because of New Concept Staining's affiliation and relationship with a white male (Marshall Walters), it was denied "disadvantaged business enterprise" certification on account of Mr. Walters's race. If Mr. Walters had been a member of a racial minority group listed in 49 C.F.R. § 26.5, the airport would have approved New Concept Staining's application and certified it as a DBE.

31. Ms. Mueller is suffering injury in fact from this denial of DBE status. The injury is fairly traceable to the conduct of the defendants, who are enforcing and administering a racially discriminatory DBE certification program. And this injury will be redressed by the relief that Ms. Mueller is requesting from this Court.

### Claim 1: Violation Of 42 U.S.C. § 1981

32. The Civil Rights Act of 1866 prohibits racial discrimination in the awarding of government contracts. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts"); 42 U.S.C. § 1981(b) ("[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").

33. PennDOT is violating 42 U.S.C. § 1981 by denying New Concept Staining's DBE status because of Mr. Walters's race.

34. Ms. Mueller asserts this claim against Secretary Gramian under 42 U.S.C. § 1983 and the implied right of action established by 42 U.S.C. § 1981. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975).

35. Secretary Buttigieg is also violating 42 U.S.C. § 1981 by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts.

36. Ms. Mueller brings this claim against Secretary Buttigieg under the implied right of action established by 42 U.S.C. § 1981, as well as *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and the Administrative Procedure Act.

### Claim 2: Violation Of Title VI

37. Title VI of the Civil Rights Act of 1964 prohibits racial discrimination in any "program or activity" that receives federal funds. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

38. PennDOT is violating Title VI by withholding DBE certification from New Concept Staining because of Mr. Walters's race.

39. Ms. Mueller asserts this claim against Secretary Gramian under 42 U.S.C. § 1983 and the implied right of action established by Title VI. *See Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979) ("Congress . . . understood Title VI as authorizing an implied private cause of action for victims of illegal discrimination.").

40. Secretary Buttigieg is also violating Title VI by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts.

41. Ms. Mueller brings this claim against Secretary Buttigieg under the implied right of action established by Title VI, as well as *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and the Administrative Procedure Act.

### Claim 3: Violation Of The Equal-Protection Clause

42. The Equal Protection Clause prohibits racial discrimination by state or local governments. *See Johnson v. California*, 543 U.S. 499, 510–11 (2005); *Shaw v. Hunt*, 517 U.S. 899 (1996) ("Racial classifications are antithetical to the Fourteenth Amendment, whose central purpose was to eliminate racial discrimination emanating from official sources in the States."); *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984) ("A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race.").

43. PennDOT is violating the Equal Protection Clause by withholding DBE certification from New Concept Staining because of Mr. Walters's race.

44. Ms. Mueller asserts this claim against Secretary Gramian under 42 U.S.C. § 1983.

### Claim 4: Violation Of The Fifth Amendment's Due-Process Clause

45. The Fifth Amendment's Due Process Clause prohibits the federal government from discriminating on account of race. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213–214 (1995).

46. Secretary Buttigieg is violating the Fifth Amendment's Due Process clause by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts.

47. Ms. Mueller brings this claim against Secretary Buttigieg under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and the Administrative Procedure Act.

### DEMAND FOR RELIEF

48. Ms. Mueller respectfully requests that the court:

a.  declare that PennDOT is violating 42 U.S.C. § 1981(a), Title VI, and the Equal Protection Clause by withholding DBE certification from New Concept Staining;

b.  declare that the Secretary Buttigieg is violating 42 U.S.C. § 1981(a), Title VI, and the Equal Protection Clause by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts;

c.  enter a preliminary and permanent injunction that prevents Secretary Gramian from withholding DBE certification from New Concept Staining;

d.  permanently enjoin Secretary Buttigieg from establishing, using, or maintaining racially discriminatory criteria to govern the awarding of government contracts;

e.  award costs and attorneys' fees under 42 U.S.C. § 1988;

f.  award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| WALTER S. ZIMOLONG <br> Pennsylvania Bar No. 89151 <br> Zimolong, LLC <br> Post Office Box 552 <br> Villanova, Pennsylvania 19085-0552 <br> (215) 665-0842 (phone) <br> wally@zimolonglaw.com <br><br> GENE P. HAMILTON* <br> Virginia Bar No. 80434 <br> Vice-President and General Counsel <br> America First Legal Foundation <br> 300 Independence Avenue SE <br> Washington, DC 20003 <br> (202) 964-3721 <br> gene.hamilton@aflegal.org <br><br> Dated: October 7, 2022 | JONATHAN F. MITCHELL <br> Pennsylvania Bar No. 91505 <br> Mitchell Law PLLC <br> 111 Congress Avenue, Suite 400 <br> Austin, Texas 78701 <br> (512) 686-3940 (phone) <br> (512) 686-3941 (fax) <br> jonathan@mitchell.law <br><br><br><br><br> * *pro hac vice* application forthcoming <br><br> *Counsel for Plaintiff* |